UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RANDY W. POLLACK,                          )
                                           )
                        Plaintiff,         )
                                           )
            v.                             )            12 C 6896
                                           )
CROWN CORK AND SEAL, USA, INC.,            )
                                           )
                        Defendant.         )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on the motion for summary judgment of Defendant Crown Cork and Seal, USA, Inc. ("Crown") pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, the motion is granted.

## BACKGROUND

I.      FACTS

The following facts are taken from the parties' respective statements and exhibits filed pursuant to Northern District of Illinois Local Rule 56.1. The Court reviews each Local Rule 56.1 statement and disregards any argument, conclusion or assertion unsupported by the evidence in the record.

Plaintiff Randy W. Pollack ("Pollack") is a white male who resides in Mokena, Illinois. From September 2000 through August 31, 2010, Pollack worked at Crown's plant in Aurora, Illinois, as a supervisor of the printing of aerosol cans. On

December 4, 2009, Pollack received a disciplinary warning for eleven absences, an amount which Crown deemed to be excessive. Pollack was reminded of the importance of a supervisor's attendance to oversee subordinates. The record indicates that attendance is especially important, as each shift contains one supervisor.

On June 8, 2010, Pollack visited the emergency room suffering from palpitations. He was released and told to seek treatment for the problem. Pollack learned that he suffered from Thoracic Outlet Syndrome, a condition which caused him to become short of breath occasionally. Pollack would need to cease whatever activity he was engaged in when his condition became aggravated.

Over approximately the next two and a half months, Pollack saw several doctors for this condition, and he sent Crown e-mails stating that he would be out of work for specified periods of time. He attached notes from these doctors to the e-mails. A pattern emerged: Pollack would visit a doctor, receive a note excusing him from work until a specified date, not return to work, and send Crown a different doctor's note excusing him until another date. Finally, Dr. Mark Morasch ("Dr. Morasch") treated Pollack and sent Crown documentation indicating that Pollack would be released sans restrictions as of August 31, 2010.

Pollack did not return to work on August 31, 2010. In the meantime, he had complained to Claudia Ruiz ("Ruiz"), the Human Resources Manager of Crown's Aurora plant, about the frequency and volume of paperwork he was being asked for by Crown. Pollack also may have mentioned that James Haire ("Haire"), a fellow

Crown employee of a different race who also may have been disabled, did not have to incur the hurdles that Pollack did. On September 10, at the recommendation of Mark Luchette ("Luchette"), Doug McLaughlin ("McLaughlin"), Crown's Director of Compensation, approved Pollack's termination as of August 31, 2010, for having failed to appear for work upon his doctor's release. On September 16, 2010, Pollack sent an e-mail to Kenneth Wright, a vice president of Crown, alleging that he was under the care of yet more doctors. Crown did not possess this information at the time that it terminated Pollack. Ultimately, Pollack had two surgeries for his thoracic condition in October 2010 and February 2011, and he was finally released by another doctor to return to work in August 2011.

## II.    PROCEDURAL HISTORY

On November 22, 2010, Pollack filed a discrimination charge against Crown with the Equal Employment Opportunity Commission ("EEOC"), alleging that Crown terminated his employment due to his race, age, and disability, and that Crown unlawfully retaliated against him. The EEOC issued Pollack a Notice of Right to Sue letter on May 30, 2012. Pollack filed a complaint on August 28, 2012, alleging that Crown terminated his employment because of his race and color in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); his age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"); and his alleged disability, Thoracic Outlet Syndrome, in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* Pollack additionally alleges that Crown failed to

accommodate his alleged disability under the ADA.  Finally, Pollack claims that Crown retaliated against him in violation of Title VII, 42 U.S.C. § 2000e-3, when it terminated his employment.  On May 1, 2013, the parties stipulated to the dismissal of Pollack's ADEA claim.  On June 6, 2013, Crown moved for summary judgment pursuant to Federal Rule of Civil Procedure 56.

## LEGAL STANDARD

Summary judgment is appropriate when the pleadings, discovery, disclosures, and affidavits establish that there is no genuine issue of material fact, such that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The movant bears the initial burden of showing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  The burden then shifts to the non-moving party to show through specific evidence that a triable issue of fact remains on which the non-movant bears the burden of proof at trial.  *Id.* at 325.  The non-movant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; he must go beyond the pleadings and support his contentions with documentary evidence.  *Id.*  A genuine issue of material fact exists when, based on the evidence, a reasonable jury could find in favor of the non-movant.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In considering a motion for summary judgment, the court construes all facts and draws all reasonable inferences in favor of the non-movant.  *Smith v. Hope Schs.*, 560 F.3d 694, 699 (7th Cir. 2010).

**DISCUSSION**

I.     The Parties' Objections to Admission of Evidence

Crown objects to the admission of Pollack's testimony with respect to what Haire told Pollack about the manner in which he (Haire) was being treated as compared to Pollack with respect to the issue of paperwork.  This evidence is clearly a statement made by an out-of-court declarant offered for the truth of the matter asserted.  It is thus inadmissible hearsay.  *See* Fed. R. Evid. 802.  Haire provided neither testimony nor an affidavit, and Pollack cannot use this information to bolster his claim.  Crown also generally objects that some of Pollack's undisputed facts contained in his Local Rule 56.1 statement are not supported by the record.  The Court has already indicated that it will disregard any such facts.  *See Cady v. Sheahan*, 467 F.3d 1057, 1060 (7th Cir. 2006).  The Court need not comment further on Crown's objection.

II.    Race and Disability Discrimination Claims

Crown argues that the undisputed evidence demonstrates that it is entitled to judgment as a matter of law on each of Pollack's discrimination claims.  Title VII prohibits an employer from terminating an employee on the basis of race or color.  42 U.S.C. § 2000e-2(a)(1).  The ADA forbids employers from discriminating against a "qualified individual" because of a disability.  42 U.S.C. § 12112.

Under Title VII and the ADA, a plaintiff may establish his discrimination claims by either the direct or indirect methods of proof.  *Casna v. City of Loves Park*,

574 F.3d 420, 426 (7th Cir. 2009). The direct method requires a plaintiff to offer direct or circumstantial evidence that an employer's decision to terminate an employee was motivated by his race, color, or disability. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002). A decision-maker's admission that the employee was discharged based on discriminatory intent suffices to establish direct evidence of employment discrimination. *Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593 (7th Cir. 2008). Circumstantial evidence is made up of three categories: (i) "suspicious timing, ambiguous oral or written statements or behavior toward or comments directed at other employees in the protected group;" (ii) "evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment;" or (iii) "evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class and the employer's reason is a pretext for discrimination." *Good v. Univ. of Chi. Med. Ctr.*, 673 F.3d 670, 675 (7th Cir. 2012) (citation and quotation omitted). A plaintiff must present circumstantial evidence that "points directly to a discriminatory reason for the employer's action." *Id.* at 675.

To establish a prima facie case of reverse discrimination based on race or color under the indirect method of proof, a plaintiff must establish: (i) "background circumstances that demonstrate that a particular employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand"; (ii) that he was meeting the employer's legitimate

performance expectations; (iii) that he suffered an adverse action; and (iv) that he was treated less favorably than similarly situated individuals who did not possess protected status. *Good*, 673 F.3d at 678 (citation and internal quotation marks omitted); *see also Hobbs v. City of Chi.*, 573 F.3d 454, 461 (7th Cir. 2009) (articulating legitimate expectations prong). The elements are the same for an ADA discrimination claim under the indirect method, except that the first prong is replaced with the requirement that the plaintiff demonstrate that he is "disabled" within the meaning of the ADA. *Mobley v. Allstate Ins. Co.*, 531 F.3d 539, 548 (7th Cir. 2007). A plaintiff must establish each element to avoid summary judgment in favor of the defendant. *Atanus v. Perry*, 520 F.3d 662, 673 (7th Cir. 2008). Establishing each element creates a presumption of discrimination, which a defendant may rebut with evidence that the plaintiff was discharged for legitimate, noninvidious reasons. *Id.* at 673. If the defendant shows that the plaintiff's discharge was for legitimate reasons, the burden shifts back to the plaintiff, who must then establish that the defendant's stated reasons "are false and only a pretext for discrimination." *Id.*

A.      Racial and Color Discrimination Claim

Pollack has not responded to Crown's arguments with respect to the issue of racial discrimination. The Court thus views the motion as unopposed with respect to this count. A non-movant's failure to respond to a motion for summary judgment does not automatically result in a judgment in favor of the movant. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006). The ultimate burden of

persuasion still remains with the movant to show that he is entitled to judgment as a matter of law. *Id.* at 608.

In the instant case, the sole evidence regarding treatment of anyone of another race concerns Haire's statements to Pollack, which the Court has already ruled to be inadmissible hearsay. Pollack only can testify to Haire's being of a different race. Pollack has not shown personal knowledge of the specifics of Haire's employment situation with Crown. Pollack is caucasian. Luchette, who recommended that Pollack be terminated, is caucasian. McLaughlin, who approved Pollack's termination, is also caucasian. Pollack has presented no background evidence that would indicate that Crown or any of the relevant Crown personnel have discriminated against whites. Pollack merely believes that he was replaced by someone of Hispanic descent, but the Court cannot find the name of this employee after a careful perusal of the record. The Court also cannot examine the qualifications of Pollack's supposedly Hispanic replacement. In sum, Pollack's being caucasian, based on the record, had no bearing on his having been terminated.

B.      ADA Discrimination Claim

As a preliminary matter, the Court emphasizes that the alleged disability upon which the Court is basing its ruling is Thoracic Outlet Syndrome. In his response to Crown's motion, Pollack has cryptically inserted several paragraphs concerning obesity, including a verbatim transcription of the Wikipedia definition of this condition. As obesity was not raised in Pollack's complaint, the Court disregards it

for the purposes of the instant motion in the event that Pollack is asserting it as a disability. *See Berry v. Chi. Transit Auth.*, 618 F.3d 688, 693 (7th Cir. 2010) (claim forfeited where it is first raised in response to summary judgment).

Pollack faces similar hurdles with respect to his ADA claim, which he seeks to prove via the indirect method. However, the only other employee Pollack points to is Haire, who was apparently on disability for a knee injury. Pollack's sole support for the claim that Haire was treated differently is that Haire told him so, and the Court has already deemed this evidence to be inadmissible hearsay. Pollack has fallen short of producing evidence that he and Haire were similarly situated, meaning that he and Haire were comparable in terms of qualifications, performance, and conduct. *See Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). As Pollack has failed to identify a similarly situated individual who was treated differently, he cannot substantiate his ADA claim via the indirect method.

Assuming, arguendo, that Pollack was disabled, he also was not meeting his employer's legitimate expectations in that he was not attending work. When assessing whether an employee met his employer's legitimate performance expectations, the court looks to whether the expectations were reasonable and in good faith, and whether the employee's conduct met those expectations. *Robin v. ESPO Eng'g Corp.*, 200 F.3d 1081, 1090 (7th Cir. 2000). In the instant case, as Crown's 2009 disciplinary warning emphasized, attendance is important for a plant supervisor. Pollack was cleared to work as of August 31, 2010. He did not appear and was

terminated ten days later (retroactively to August 31) after his previous warning for eleven absences. The Court views the attendance expectation as reasonable and made in good faith. Also, it had been communicated to Pollack long before his condition became known to Crown, so the Court does not view the attendance expectation as a pretext for discrimination against Pollack due to this condition.

Pollack also alleges that Crown failed to provide him with reasonable accommodations. To establish a failure to accommodate, a plaintiff must show that: (i) he is a qualified individual who is disabled; (ii) the employer had knowledge of the disability; and (iii) the employer failed to make reasonable accommodations for it. *Cloe v. City of Indianapolis*, 712 F.3d 1171, 1176 (7th Cir. 2013). Pollack sought to remain on leave until he was fit to return to work. The Court does not view this accommodation as a reasonable one, as Pollack had missed nearly three months of work, and he failed to report back on the date which Dr. Morasch had designated. There was no end in sight to his absences, and he was not ultimately released until August 2011, six months after his second thoracic surgery.

"An employer is generally permitted to treat regular attendance as an essential job requirement and need not accommodate erratic or unreliable attendance." *Basden v. Prof'l Transp., Inc.*, 714 F.3d 1034, 1037 (7th Cir. 2013) (citation omitted). For the last three months of his employment, Pollack's attendance was nonexistent, and it had been, to say the least, problematic before that time. The Court hence finds no merit in Pollack's claim for failure to accommodate. Pollack also raises the prospect that he

could have been accommodated with a light duty workload, but nothing in the record indicates that Pollack requested this; rather, he requested many times to remain on leave, as his series of notes from various doctors evinces. A fortiori, the Court cannot hold Crown responsible for having failed to accommodate a request when no evidence has been presented that such a request was ever conveyed to it. *See Cloe*, 712 F.3d at 778-79. Having made this determination, the Court need not address Crown's alternative averment that supervisors were not eligible for light duty work.

III.     Retaliation Claim

Crown seeks summary judgment on Pollack's retaliation claim. Title VII forbids employers from discriminating against an employee for opposing a practice prohibited by Title VII, or for participating in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. § 2000e-3(a) (the "anti-retaliation statute"). The purpose of the anti-retaliation statute is to protect victims of discrimination who complain about illegal conduct to the EEOC, the courts, or the employer itself. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2006).

A plaintiff may establish a claim for unlawful retaliation via either the direct or indirect method of proof. *Id.* at 786. A plaintiff establishes a prima facie retaliation claim under the direct method by demonstrating that he: (i) engaged in a statutorily protected activity; (ii) suffered a materially adverse employment action; and (iii) demonstrates a causal connection between the two. *Id.* The indirect method calls for the plaintiff to establish the first two prongs of the direct method, plus a showing

that he performed his job satisfactorily but was treated less favorably than similarly situated employees who did not complain of discrimination. *Id.* at 786-87. If the plaintiff satisfies his initial burden under the indirect method, the defendant must articulate a legitimate, nondiscriminatory reason for its actions. *Id.* at 787. If the defendant does so, the burden shifts back to the plaintiff, who must show that the defendant's stated reason is a pretext to a discriminatory motive. *Id.*

Before addressing the merits of Pollack's retaliation claim, two preliminary matters require attention. First, in his complaint, Pollack claims that a retaliation violation has occurred under Title I of the ADA. For the sake of specificity, the Court notes that it reads the complaint to mean that Pollack was discriminated against pursuant to Title I, and the retaliatory action for his alleged complaints about said discrimination would be violative of Title VII. Second, in his response to the present motion, Pollack for the first time raises the issue of retaliation due to a claim filed with the Department of Labor pursuant to the Family Medical Leave Act. This issue was not raised in Pollack's complaint, and the Court thus will not consider it. *See Berry*, 618 F.3d at 693.

Pollack claims that he was retaliated against as a result of his having complained to Ruiz about the amount of paperwork he had to complete regarding his absences and that he was not being treated like Haire, though Pollack cannot recall if he mentioned Haire's name to Ruiz. Even if the Court were to agree that this complaint constituted a discrimination claim, the Court does not find evidence of

retaliation in Pollack's termination, for McLaughlin in his declaration stated that he had no knowledge of Pollack's complaint to Ruiz when he approved Pollack's termination. No evidence exists in the record to contradict McLaughlin's declaration, so the Court must conclude, based on the record, that McLaughlin did not approve of Pollack's termination in retaliation for the complaint to Ruiz. In other words, there is no causal connection between Pollack's complaint and his termination. *See Stephens*, 569 F.3d at 788 (summary judgment in retaliation claim proper where superior did not know of the plaintiff's complaint).

Pollack also cannot show retaliation under the indirect method because he has not pointed to any other similarly situated individual who was treated differently than Pollack. Pollack only references Haire but does not indicate whether or not Haire ever complained of discrimination. Furthermore, the Court has detailed how Pollack was failing to perform his job satisfactorily given his serious attendance issues that predated the condition at issue.

## CONCLUSION

Pollack has made no effort in his response brief to demonstrate that race played a part in his termination. With respect to Pollack's ADA claims, the Court holds that Pollack was not discriminated against due to a disability but rather was terminated because he could not perform an essential function of his job, attendance at that job. Pollack's request for an accommodation (extended leave) was not reasonable, and Crown did not act improperly in terminating him when he failed to appear for work

after Dr. Morasch had released him. Pollack's retaliation claim must fail because Pollack cannot show that the Crown superior who terminated him was aware of his previous complaint to Ruiz, and the superior has declared he was not aware of it. Also, due to his lapses in attendance, Pollack was not meeting Crown's legitimate expectations. Therefore, Crown's motion for summary judgment is granted.

_____
Charles P. Kocoras
United States District Judge

Dated:   August 16, 2013